## CHAMBERS v. WYATT.

(Court of Civil Appeals of Texas. El Paso. Nov. 14, 1912. Rehearing Denied Dec. 18, 1912.)

1. CANCELLATION OF INSTRUMENTS (§ 59*)— FRAUD—IMPROVEMENTS.

Where a grantee obtained a conveyance by fraud, and entered into possession and made improvements while wrongfully in possession, he could not recover the value of the improvements on the setting aside of the deed.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 119–125; Dec. Dig. § 59.*]

2. ESTOPPEL (§ 59*)—SILENCE—PERMITTING IMPROVEMENTS.

A grantee who obtained his deed by fraud cannot rely on an estoppel against the grantor

to deny his title, based on her silence while he was making improvements.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 146, 147; Dec. Dig. § 59.*]

**3. CANCELLATION OF INSTRUMENTS (§ 24*)— CONDITIONS PRECEDENT—FRAUD.**

An administrator of a deceased grantor, who sues to set aside a deed as having been procured by fraud of the grantee, need not offer to return the taxes paid on the property by the grantee.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 33–38; Dec. Dig. § 24.*]

**4. DEEDS (§ 165*)—CANCELLATION—GROUNDS.**

Where a deed is absolute on its face, agreements by the grantee to support the grantor for life and pay her a specified sum are covenants only, and a failure to perform them will not alone authorize the cancellation of the deed; but an action lies for sum unpaid, secured by an implied lien on the premises.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 521; Dec. Dig. § 165.*]

**5. DEEDS (§ 70*)—CANCELLATION—GROUNDS— FRAUD.**

The rule that the failure of a grantee to perform covenants binding him to support the grantor for life and pay to her a specified sum, in consideration of which a deed was executed, is not fraud justifying the cancellation of the deed does not apply where the promises are made to defraud and without any intent at the time of performing them; but an instruction authorizing a finding of fraud on such theory is fatally defective, where it ignores the element that, when made, the promises were fraudulent and without any intent of performing them.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 165–182; Dec. Dig. § 70.*]

**6. CANCELLATION OF INSTRUMENTS (§ 56*)— CANCELLATION—GROUNDS—FRAUD.**

Where a grantee in a deed of a lot procured by fraud the insertion of a provision conveying also another lot, a recovery on the ground of fraud was limited to a cancellation of the deed as to the latter lot.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 112, 113; Dec. Dig. § 56.*]

**7. WITNESSES (§ 359*)—IMPEACHMENT—PROOF OF CONVICTION OF FELONY.**

In the absence of proper objection, the fact that a witness has been convicted of felony may be shown by parol.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1161, 1162; Dec. Dig. § 359.*]

**8. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—REQUISITES.**

Where assignments of error are submitted as propositions, and as such they are multifarious, they will not be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

**9. WORK AND LABOR (§ 22*)—RECOVERY FOR SERVICES RENDERED — PETITION — SUFFICIENCY.**

A petition, in a suit for the cancellation of a deed and for recovery for services rendered by the grantor to the grantee, which alleges that after the conveyance and until a short time prior to the grantor's death she worked for the grantee as a servant, and that the reasonable value of her services was a specified sum per week, for which amount a recovery was demanded, stated facts supporting a finding for wages due for services performed.

[Ed. Note.—For other cases, see Work and Labor, Cent. Dig. § 41; Dec. Dig. § 22.*]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by P. B. Wyatt, administrator of Catherine Williams, deceased, against W. J. Chambers. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

W. H. Ward, of Houston, for appellant. A. C. Van Velzer and Fred R. Switzer, both of Houston, for appellee.

HIGGINS, J. Catherine Williams, an aged and ignorant negress, owned and resided upon lots 4 and 5, in block 49, in the Baker addition to the city of Houston, and by general warranty deed, dated October 3, 1907, she conveyed the same to appellant, reciting a consideration of $10 in cash, the payment by Chambers of taxes due the city of Houston, the county of Harris, and the state of Texas, and other valuable considerations in hand paid, the receipt of which was acknowledged. Chambers at once went into possession of the premises, built a residence upon lot 5, in which he and his family lived, and made other improvements. The house in which the negress had lived for many years was moved upon lot 4 and repaired by Chambers, and she continued to live therein until a few days before her death, when she was removed to another place in the city by a niece. She died during the month of July, 1910, and on August 2d of that year this suit was filed to recover said premises by the appellee, as administrator of her estate. A recovery of the premises is sought upon two theories: First, that Catherine Williams only intended to convey lot 5, and that lot 4 had been inserted in the deed without her knowledge or consent, and she had executed the same upon the fraudulent representation and under the belief that lot 5 only was conveyed by the deed; second, that the conveyance was made in consideration of representations and promises by Chambers that he would pay the back taxes due upon the premises, would support and care for the grantor during her lifetime, and would pay her the further sum of $700 in cash; and there is a general allegation that these representations and promises were fraudulent, without particularizing in what the fraud consisted. In the petition it was further alleged that after the conveyance, and until a short time prior to her death, Catherine Williams had worked for Chambers as a servant, and the reasonable value of her service was $3 per week, for which amount a recovery was also sought. Defendant answered by general demurrer, general denial, plea of estoppel predicated upon the theory that immediately after the execution of the deed he went into possession with the full knowledge and consent of Catherine Williams, made permanent and valuable improvements upon the land, exercised control of and asserted his ownership thereof without

protest on her part; wherefore he pleaded an estoppel to deny his ownership of the premises. He also pleaded permanent and valuable improvements made upon the premises in good faith, and prayed that he be allowed the value thereof, in the event of a recovery by plaintiff of the land.

[1, 2] As to those assignments relating to the plea of estoppel and the claim for the value of the improvements, it is sufficient to say that if the plaintiff was entitled to recover it was by virtue of fraud practiced by the defendant in obtaining a conveyance of the premises; and, his possession and apparent title being based upon his own fraud, the fact that he went into possession as a result of that fraud, and while wrongfully in possession thereof made such improvements and asserted such ownership, would give him no right to claim the value of his improvements, nor to assert an estoppel. Neither estoppel, nor a claim for valuable improvements made in good faith, could possibly be predicated upon rights which originated in fraud.

[3] Error is assigned to the action of the court in overruling the general demurrer, the proposition advanced being that the petition was insufficient, because appellee did not offer to return the taxes paid upon the property by the appellant. As above stated, appellee was asserting a legal right to recover the premises predicated upon fraud alleged to have been perpetrated by the grantee in obtaining the deed, and, under such circumstances, no equitable right of reimbursement for taxes paid existed in favor of appellant.

Error is assigned to the refusal of the court to give a special charge to the effect that a failure upon part of defendant to pay the cash consideration of $700, in accordance with his agreement, would not alone be sufficient to authorize a recovery; and appellant also complains of paragraph 5 of the court's charge, wherein the jury, in effect, are instructed to find for the plaintiff if they believe from the evidence that it was agreed between Catherine Williams and appellant that appellant was to pay the sum of $700 in cash, the back taxes on the premises, and to provide her with the necessaries of life as long as she lived, and that the said Chambers had failed to keep such promises. These assignments relate to what we conceive to be the controlling question in the case, and will be considered together.

[4] In the paragraph of the court's charge above referred to, the court proceeded upon the theory, and the jury were, in effect, charged, that mere failure upon the part of Chambers to comply with the promises made by him, and in consideration of which the deed was executed, was sufficient to authorize a cancellation of the deed and recovery of the premises. The deed, however, was absolute upon its face, and such agreements were covenants only upon the part of Chambers, and his failure to perform the same would not alone authorize the cancellation of the deed and recovery of the premises. Odom v. Odom, 139 S. W. 900; Mayer v. Swift, 73 Tex. 369, 11 S. W. 378; Byars v. Byars, 11 Tex. Civ. App. 565, 32 S. W. 925; Selari v. Selari, 124 S. W. 997; Rainey v. Chambers, 56 Tex. 17; Beaumont Carriage Co. v. Price, 104 S. W. 499. We do not desire, however, to be construed as holding that appellant was entirely absolved from complying with his contract; upon the contrary, it is well settled that he could be forced to comply with his promises. He is, of course, relieved by the death of Catherine Williams from any further obligation to support her, and it is undisputed that he has paid the taxes which he contracted to pay; but as to the $700, if it remains unpaid, a recovery therefor could be had. Mayer v. Swift, supra; Rainey v. Chambers, supra. And while there exists no express lien to secure its payment, yet he has an implied lien upon the premises, securing the same.

[5] From the authorities cited above, it will be noted that failure to keep a promise to perform some act in the future will not be regarded as fraud in its legal acceptation, although the failure to keep the promise is wholly without excuse; otherwise every breach of contract would amount to fraud, and the practical effect of the portion of the court's charge above referred to was to treat the failure of the defendant to keep his promises such fraud as would vitiate the conveyance. There is a well-recognized exception, however, to this rule, where the representations and promises are made for the purpose of defrauding and deceiving, and without any intention, at the time the same are made, of performing the same. Railway Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39; Railway Co. v. Smith, 98 Tex. 553, 86 S. W. 322; Mays v. Cearley, 138 S. W. 165; Ins. Co. v. Seidel, 52 Tex. Civ. App. 278, 113 S. W. 945. If appellee was entitled to recover upon the allegation that fraudulent representations and promises made by Chambers were the consideration for which the deed was executed, it is by virtue of this exception to the general rule, and the court evidently predicated his charge upon the principle enunciated in the cases last cited; but it is fatally defective in entirely ignoring the essential element constituting fraud under such circumstances, which is that at the time the promises were made they must have been fraudulently made for the purpose of deceiving, and without any intention at the time of performing the same.

[6] The second, ninth, tenth, and eleventh assignments question the sufficiency of the testimony to authorize a verdict in favor of the plaintiff, and in view of a retrial we refrain from a discussion thereof. In this connection, however, it may be said appellee seems to be contending that, if lot No. 4 was fraudulently inserted in the deed, it

would authorize a recovery of both lots. In this view, however, we do not concur, and are of the opinion that it would only authorize a recovery of 4. It may be well, also, in considering the evidence bearing upon the allegation that the deed for the premises was obtained by fraudulent representations and promises made by the appellant, to call attention to the case of Beaumont Carriage Co. v. Price, supra, from which we quote with approval the following: "It must, however, be made to appear by some testimony, direct or circumstantial, that at the time the party gave the promise there was no intention on his part to perform it. It is clearly not enough to prove the nonperformance; and it will not do to say that from the bare fact of nonperformance it could be inferred that the intent not to perform originally existed, because, if this were allowed, any contemporaneous agreement could be attached to a writing by parol, and the rule of law on this subject would be useless."

[7] The defendant's witness Robert Clark was shown to have been convicted of a felony by his own testimony and admissions, and in the absence of proper objection this can be shown by parol, and we therefore overrule the seventh and eighth assignments.

[8] The fifteenth and sixteenth assignments are submitted as propositions. As such they are multifarious, and are not entitled to consideration, and are not considered.

[9] The seventeenth assignment is overruled, as we are of the opinion that the pleadings are sufficient to support a finding in favor of appellee for wages alleged to be due Catherine Williams for services performed.

For the errors indicated, the cause is reversed and remanded.

HARPER, C. J., did not sit in this case.